```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
TIMES THREE CLOTHIER, LLC,             :
                                       :
                    Plaintiff,         :      13 Civ. 2157 (DLC)
                                       :
          -v-                          :
                                       :
                                       :
SPANX, INC.,                           :
                    Defendant.         :
                                       :
-------------------------------------- X
                                       :
SPANX, INC.,                           :
                                       :
                    Plaintiff,         :      13 Civ. 7260 (DLC)
                                       :
          -v-                          :
                                       :
TIMES THREE CLOTHIER, LLC,             :      OPINION & ORDER
                                       :
                    Defendant.         :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff:

Steven B. Pokotilow
Laura Goldbard George
Irah H. Donner
Binni N. Shah
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

For defendant:

Kathleen E. McCarthy
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Natasha H. Moffitt
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309


DENISE COTE, District Judge:

Plaintiff Times Three Clothier, LLC, doing business as Yummie Tummie ("Times Three"), brings suit against defendant Spanx, Inc. ("Spanx"), alleging the infringement of six design patents (the "Patents") covering certain garments.[1] <u>Times Three Clothier, LLC v. Spanx, Inc.</u>, 13 Civ. 2157 (DLC) (S.D.N.Y.) (the "<u>Times Three</u> Action").  As the parties dispute the scope of the Patents, Spanx has requested, pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996), that the Court construe the Patents' claims.  The Court resolves the parties' disputes concerning the claims' scope as set forth below.

In its motion papers, Spanx argues that three of the Patents are invalid for indefiniteness due to inconsistencies in their drawing sheets.  For the reasons set forth below, the Court agrees with respect to the '558 and '384 Patents, but disagrees as to the '377 Patent.

---

[1] U.S. Design Patent Nos. 606,285 (the "'285 Patent"); 616,627 (the "'627 Patent"); 622,477 (the "'477 Patent"); 623,377 (the "'377 Patent"); 665,558 (the "'558 Patent"); and 666,384 (the "'384 Patent").

**BACKGROUND**

On March 5, 2013, Spanx brought an action in the Northern District of Georgia seeking declaratory judgment holding that certain Spanx garments did not infringe any of seven patents held by Times Three, including four of the patents at issue here.[2]  Spanx, Inc. v. Times Three Clothier, LLC, 13 Civ. 710 (WSD) (N.D. Ga.) (the "Spanx Action").

On April 2, 2013, Times Three brought the Times Three Action against Spanx in this district, alleging infringement of the six Patents.  The same day, Times Three moved to transfer the Spanx Action to the Southern District of New York.  Times Three's motion to transfer was granted on October 15, and the Spanx Action was assigned to this Court as related to the Times Three Action.  Spanx, Inc. v. Times Three Clothier, LLC, 13 Civ. 7260 (DLC) (S.D.N.Y.).  On October 18, the Spanx Action was consolidated with the Times Three Action for pre-trial purposes.

Each of the Patents claims "[t]he ornamental design for a garment, as shown and described herein,"[3] and includes six drawing sheets: a front, rear, right, and left elevation view of

---

[2] The four overlapping patents are the '285 Patent, the '627 Patent, the '477 Patent, and the '377 Patent.

[3] The wording of the '285 Patent and '384 Patent claims differs slightly from that of the other four.  See '285 Patent (omitting the word "herein"); '384 Patent ("I claim the ornamental design for a garment, as shown and described.").

one embodiment (Figures 1-4, respectively); as well as a right
and left elevation view of a second embodiment (Figures 5 and
6).  Among the six Patents, the first application filed was for
the '285 Patent, which was also the first of the six granted.
Each of the five later applications states that it is a
continuation of the previously submitted application.

By letter of September 27, 2013, Spanx advised the Court
that it believed claim construction of the Patents was necessary
due to disputes regarding their scope.  The Court set a briefing
schedule for claim construction, and the issue was fully briefed
on January 8, 2014.[4]

Spanx has proposed detailed verbal descriptions of the
Patents.  For instance, Spanx proposes that the Court construe
the '285 Patent as follows:

> An ornamental design for the exterior of a garment
> having a top section, a center section, and a lower
> section as shown in Figures 1 through 6 of the '285
> Patent, wherein the top section is separated from the
> center section by a first ornamental line, wholly
> separate and distinct from any stitching, which first
> ornamental line extends around the circumference of
> the exterior of the garment at the location shown and
> in the manner shown in Figures 1 through 6; wherein
> the center section is separated from the lower section
> by a second ornamental line, wholly separate and
> distinct from any stitching, which second ornamental

---

[4] Because Times Three did not address Spanx's contention that
three of the Patents are valid until its reply brief, Spanx
submitted a sur-reply on January 8.  Times Three did not oppose
Spanx's request for leave to file its sur-reply, and the Court
has considered it with the rest of the parties' briefing.

line extends around the circumference of the exterior
of the garment at the location shown and in the manner
shown in Figures 1 through 6; and wherein the center
section and the lower section are made of different
materials.  The dashed lines depicted in the drawings
represent stitching and form no part of the claimed
design.

Times Three, which submits that no claim construction is

necessary, proposes the following construction of the '285

Patent:

The ornamental design of a garment as shown and
described in Figures 1 through 6 of the '285 Patent.

**DISCUSSION**

**I.   Claim Construction**

Instead of attempting to reduce to words the designs at

issue, which are best represented by the Patents' drawings, the

Court directly addresses the issues the parties have raised

concerning the Patents' scope.  In their briefing, the parties

present three major disputes:

(1)   Are the claimed designs limited to the exterior of a
garment, or do they encompass similar designs in the
interior of a garment, as well?

(2)   Can stitching form any part of the claimed designs?

(3)   Where the designs are shaded differently, must those
portions of the garment be made of different
materials?

For the reasons set out below, the Court holds as follows:

(1)   The claimed designs are limited to the exterior of a
garment.

(2)   Stitching may form a part of the claimed designs.

(3)  The '285 Patent requires different materials where the
     designs are shaded differently; the '627 Patent and
     the '558 Patent do not.

## A.  Legal Standard

"It is a bedrock principle of patent law that the claims of
a patent define the invention to which the patentee is entitled
the right to exclude." Aventis Pharma. Inc. v. Amino Chemicals
Ltd., 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting Phillips v.
AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)).
"Design patents have almost no scope" and are "limited to what
is shown in the application drawings." In re Mann, 861 F.2d
1581, 1582 (Fed. Cir. 1988); accord MRC Innovations, Inc. v.
Hunter Mfg., LLP, 2014 WL 1303368, --- F.3d ---, at *3 n.1 (Fed.
Cir. Apr. 2, 2014) (quoting Mann and noting that "in practice,
our focus [has been] on the 'overall visual appearance' of a
claimed design").  In construing a patent claim, which is a
question of law, a court "should look first to the intrinsic
evidence of record, i.e., the patent itself, including the
claims, the specification and, if in evidence, the prosecution
history." Am. Calcar, Inc. v. Am. Honda Motor Co., Inc., 651
F.3d 1318, 1336 (Fed. Cir. 2011) (citation omitted).  A court
may consider extrinsic evidence, such as expert and inventor
testimony, dictionaries, and treatises, but such extrinsic
evidence is "generally of less significance than the intrinsic
record." Takeda Pharma. Co. Ltd. v. Zydus Pharma. USA, Inc.,

743 F.3d 1359, 1363 (Fed. Cir. 2014).  If the meaning of the claim is clear from the intrinsic evidence alone, resort to extrinsic evidence is improper.  Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372, 1377 (Fed. Cir. 2005).

The words of a claim are generally to be given "their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history."  Starhome GmbH v. AT&T Mobility LLC, 743 F.3d 849, 856 (Fed. Cir. 2014) (citation omitted).  "A patentee, however, can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning."  Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc., 467 F.3d 1370, 1376 (Fed. Cir. 2006) (citation omitted).  In addition, "the specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1361 (Fed. Cir. 2013) (citation omitted).  Although courts use the specification "to interpret the meaning of a claim," at the same time courts must "avoid the danger of reading limitations from the specification into the claim" itself.  Phillips, 415 F.3d at 1323.  A patentee may "disavow[] the full scope of a claim term either in the

specification or during prosecution." Starhome, 743 F.3d at 856 (citation omitted).

The construction of design patents presents a special challenge to courts, as "[d]esign patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting." Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1302 (Fed. Cir. 2010). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008). "As a rule, the illustration in the drawing views is its own best description." Crocs, 598 F.3d at 1303 (citation omitted). Nonetheless, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1362 (Fed. Cir. 2008). Thus, resolution of discrete disputes regarding claim scope may be appropriate, rather than a verbal description of the entire claim. See Egyptian Goddess, 543 F.3d at 679 ("While this court has held that trial courts have a duty to conduct claim construction in design patent cases, . . . the court has

not prescribed any particular form that the claim construction must take.").

**B.   The Patents Are Limited to a Garment's Exterior.**

All six Patents exclusively claim the exterior of a garment; they do not extend to the interior.  This is apparent from the drawings of each of the six Patents, but it is made explicit in the description of the '477, '377, and '384 Patents. Each of the Patents includes four drawing sheets showing side views -- two for each of the two depicted embodiments -- and all of these side views depict the garment as filled out by a female form.  This is expressly recognized in the descriptions of the '477, '377, and '384 Patents,[5] which note that the dashed or broken lines depicting "the human form shown in the drawings are for environmental structure only and form no part of the claimed design."[6]  (Emphasis added.)  In all drawing sheets for each of the six Patents, the claimed design appears on the exterior of

---

[5] This language appears in the specification of the '377 Patent, despite the fact that the patent examiner struck it from the patent application in her Notice of Allowability on the ground that the "human form" was not itself visible in the drawing views.

[6] As each of the Patents claims to be a continuation of the '285 Patent, the claims are to be "interpret[ted] . . . consistently across all asserted patents."  NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1293 (Fed. Cir. 2005) (applying this principle to patents that "derive from the same parent application and share many common terms").

the garment, as worn.  There is no indication anywhere in any of the claims, specifications, or prosecution histories that any part of the interior of a garment was claimed.

Times Three argues that the specifications and prosecution histories do not expressly limit the claimed designs to the exterior of a garment, simply ignoring the fact that the drawing sheets, which define the claims, depict a female form wearing a garment with the claimed designs on the exterior of the garment. The closest Times Three comes to grappling with this fact is to assert that the claims "do not require the claimed designs to be worn or displayed a particular way."  Times Three is mistaken: the Patents claim the designs "as shown and described," and the designs shown appear on the <u>exterior</u> of the garment, as worn. It is not plausible -- and would radically depart from the "ordinary and customary meaning" of the claims and incorporated drawing sheets -- that the garments depicted are being worn inside-out, or are meant to be reversible.  Indeed, "[d]esign patents have almost no scope" and are "limited to what is shown in the application drawings."  <u>In re Mann</u>, 861 F.2d at 1582.

The only authority Times Three cites in support of its argument is <u>International Seaway Trading Corp. v. Walgreens Corp.</u>, 589 F.3d 1233 (Fed. Cir. 2009), but <u>International Seaway</u> is inapposite.  In <u>International Seaway</u>, the Federal Circuit held that, when comparing two designs to determine whether one

design infringes upon or anticipates the other, courts must consider the entirety of the designs, including all "features visible at any time in the 'normal use' lifetime of the accused product," which "extends from the completion of manufacture or assembly until the ultimate destruction, loss, or disappearance of the article." Id. at 1241. Thus, the Federal Circuit held the district court had erred in ignoring differences in the insoles in two clog designs. Id. at 1241-42.

Had Times Three noted, in its drawing sheet, that it was depicting the interior of a garment, that the garment was being worn inside-out, or otherwise indicated that its claim extended to the interior of a garment, it could certainly argue, on the basis of International Seaway, that such an interior design would be relevant to a later infringement analysis. But International Seaway does not stand for the proposition that a claim for a design of one feature of a product extends to designs of other features; it did not hold, for instance, that the claimed design of the insole also encompassed similar patterns on the exterior of the clog. Because Times Three's claims are limited to the designs "as shown and described," and they are depicted as designs of the exterior of a garment, the Patents' claims are limited to designs of the exterior of a garment.

**C.   Stitching May Form Part of the Claimed Designs.**

Stitching may form part of the claimed designs.  While four of the Patents' descriptions disclaim the broken lines "depicting the stitching shown in the drawings" ('285, '377, '477, and '384  Patents) (emphasis added),[7] this is not tantamount to disclaiming all stitching that might appear on a garment.  Even in a garment with stitching identical to the stitching depicted as "environmental structure" only, there is no reason that additional, ornamental stitching could not make up one of the claimed ornamental lines.

Spanx's argument mistakenly conflates the Patents' disclaiming of "the stitching shown in the drawings" with disclaiming any ornamental use of stitching.  Spanx finds no support in the "ordinary and customary meaning" of these disclaimers, and cites no other intrinsic or extrinsic evidence in support of its construction.  Therefore, the Patents extend to designs that employ stitching to form one or more of the claimed ornamental lines.

---

[7] The '384 Patent's description is a slight variation of the above:  "depicting stitching . . . shown in the drawings" ('384 Patent).  The other two Patents disclaim the broken lines illustrating "environmental structure" ('627 Patent) and "environmental features that form no part of the claimed design" ('558 Patent).

### D.   The '285 Patent is Limited to Garments Employing Different Materials; the '627 and '558 Patents Are Not.

According to its specification, the '285 Patent employs shading to depict "contrasting materials"; the specifications in the '627 Patent and the '558 Patent state that shading is used to illustrate "a different appearance."  Per "ordinary and customary usage," the phrase "contrasting materials" requires different materials; even Times Three admits that "[t]he plain and ordinary meaning of 'contrasting materials' . . . is a 'difference in the materials.'"  The prosecution history of the '285 Patent confirms that the shaded region was "intended to represent a change in material and not color or unclaimed subject matter."  (Emphasis added.)  Accordingly, the '285 Patent's claim only encompasses garments that use a material in the shaded region different from the material used in the unshaded region.

With respect to the '627 Patent and the '558 Patent, "ordinary and customary usage" of the phrase "a different appearance" does not necessarily imply the usage of a different materials.  A change in color or weave may create "a different appearance," even though both shaded and unshaded regions employ the same material.  No intrinsic or extrinsic evidence is to the contrary.  Thus, the '627 Patent's and the '558 Patent's claims encompass garments that have "a different appearance" in the

13

shaded regions, whether or not the same material is employed in the shaded and unshaded regions.

Both Spanx and Times Three argue that "contrasting materials" and "different appearance" should be construed the same way, although Spanx argues "different appearance" should be construed to mean "contrasting materials" and Times Three argues the reverse.  Both parties are mistaken.

The application for the '627 Patent initially read "contrasting materials" instead of "a different appearance," but the patent examiner changed the phrase after the inventor's counsel "clarified that the statement within the Specification noting 'contrasting material' meant a 'different appearance.'"[8] That is, counsel "clarified" that by "contrasting material" the patentee intended a "different appearance," and the Patent was changed accordingly.

This is not an instance where the patentee acted as her own lexicographer and both "clearly express[ed] an intent to redefine [a claim] term" and "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning."  Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc., ---

---

[8] Times Three does not contend that this interview concerning the patent application corresponding to the '627 Patent, which occurred on March 24, 2010, served to enlarge the scope of the '285 Patent, which was issued months before on December 22, 2009.  In any case, the prosecution history of the '285 Patent confirms that "a change in material" was intended there.

F.3d ---, 2014 WL 593486, at *6 (Fed. Cir. Feb. 18, 2014)
(citation omitted).  Here, the phrase "contrasting materials"
was stricken from the Patent, not adopted as a definition for
the term it replaced.  Indeed, it would have been nonsensical
for the patent examiner to replace the phrase "contrasting
materials" with "a different appearance" if the claim's scope
was to be defined by the deleted phrase.

Times Three's argument fails as well.  Times Three argues
that, pursuant to the Manual of Patent Examining Procedure,
shading is meant to "broadly cover contrasting surfaces
unlimited by colors" and does not limit a claim "to specific
material."  M.P.E.P. ¶ 15.48.  That is, by convention, shading
does not itself impose certain limits on the scope of a claim.
But here, the Patents claim the designs "as shown and
described," and the Patents' own descriptions limit their
claims.  Because the '285 Patent states that its drawings employ
shading "to illustrate contrasting materials," its claim is so
limited.

Although these Patents' claims should be "interpret[ted]
. . . consistently across all asserted patents," NTP, Inc. v.
Research In Motion, Ltd., 41 F.3d 1282, 1293 (Fed. Cir. 2005),
"consistent[]" interpretations need not be identical.  Here the
prosecution history of the '627 Patent indicates that, after the
'285 Patent was issued, the patentee's counsel elected to

15

broaden the scope of the claim by "clarif[ying]" that the
patentee meant the less restrictive "different appearance"
instead of "contrasting materials."  As a result, the '285
Patent is limited to garment designs employing different
materials in the shaded regions, while the later '627 and '558
Patents are not.

## II.   Indefiniteness

Spanx also argues that the '558 Patent, the '384 Patent,
and the '377 Patent are invalid for indefiniteness pursuant to
35 U.S.C. § 112.  These three patents are the last three of the
six to issue.  For the reasons set forth below, the Court finds
that the '558 and '384 Patents, but not the '377 Patent, are
invalid.

### A.   Legal Standard

To satisfy the requirements of Section 112, a patent's
specification must "conclude with one or more claims
particularly pointing out and distinctly claiming the subject
matter which the inventor . . . regards as the invention."  35
U.S.C. § 112(b).  To satisfy Section 112, a claim must be
"sufficiently definite to inform the public of the bounds of the
protected invention, i.e., what subject matter is covered by the
exclusive rights of the patent."  Ancor Techs., Inc. v. Apple,
Inc., 744 F.3d 732, 737 (Fed. Cir. 2014) (citation omitted).

Although "[a]bsolute clarity" is not necessary, Source Search Techs., LLC v. LendingTree, LLC, 588 F.3d 1063, 1076 (Fed. Cir. 2009), a claim is indefinite if it is "not amenable to construction or [is] insolubly ambiguous." Teva Pharma. USA, Inc. v. Sandoz, Inc., 723 F.3d 1363, 1368 (Fed. Cir. 2013) (citation omitted). The analysis turns on whether one skilled in the art could "discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." Id. (citation omitted). In making this determination, courts apply "[g]eneral principles of claim construction." Biosig Instruments, Inc. v. Nautilus, Inc., 715 F.3d 891, 898 (Fed. Cir. 2013). Because a patent is presumed valid, 35 U.S.C. § 282, the challenging party bears the burden of proving invalidity, and must do so by clear and convincing evidence. Takeda Pharma., 743 F.3d at 1366.

A court's power to correct an error in a patent via claim construction is limited. In the absence of a certificate of correction from the Patent and Trademark Office ("PTO"), a court may only correct the error where "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Rembrandt Data Techs., LP v. AOL, LLC, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (citation omitted). Thus, while a court may "correct

17

obvious minor typographical and clerical errors," "major errors are subject only to correction by the PTO." Novo Indus., LP v. Micro Molds Corp., 350 F.3d 1348, 1357 (Fed. Cir. 2003).  Where a court "cannot know [which of several possible] correction[s] is necessarily appropriate or how the claim should be interpreted" -- that is, where a court is "required to guess as to what was intended" -- the court may not correct the error, and a holding of invalidity for indefiniteness may be appropriate.  Id. at 1358; cf. Rembrandt, 641 F.3d at 1339 ("[C]ourts may not redraft claims, whether to make them operable or to sustain their validity." (citation omitted)).

## B. Definiteness Challenges to the '558, '384, and '377 Patents

For the reasons described below, the '558 and the '384 Patents are invalid for indefiniteness, but Spanx has failed to overcome the presumption of validity of the '377 Patent.

### 1. Inconsistency as to the Shape and Position of the First Ornamental Line Renders the '558 Patent Indefinite.

The drawing sheets for both embodiments of the '558 Patent claim are inconsistent as to the shape and position of the first ornamental line below the bust.  Figures 1 and 2, which depict front and back elevation views of both embodiments, show a straight horizontal line.  Yet, Figures 3 and 4, which depict right and left elevation views of the first embodiment, and

Figures 5 and 6, which depict right and left elevation views of the second embodiment, show an ornamental line angled up at approximately 30 degrees as it moves from the back of the garment up to the front.

### '558 Patent Figures 1-6



Fig. 1    Fig. 2    Fig. 3    Fig. 4    Fig. 5    Fig. 6

The first ornamental line -- one of only two -- is a fundamental part of the claimed design, and replacing the straight line with the angled line or vice-versa would materially alter the "subject matter . . . covered by the exclusive rights of the patent." Ancor, 744 F.3d at 737.  Times Three has not identified any intrinsic or extrinsic evidence that would indicate which of the two versions of the first ornamental line the patentee meant to claim.  Because one skilled in the art could only guess as to which of these designs is claimed, the '558 Patent is "insolubly ambiguous" and thus invalid for indefiniteness. Teva, 723 F.3d at 1368 (citation omitted).

Times Three argues that one skilled in the art would simply "look to the consistent views of the Figures 3, 4, 5, and 6 to determine the position and shape of the first ornamental line." But Times Three ignores the fact that these figures depict two different embodiments. The '558 Patent's drawing sheets depict two embodiments of the claimed design: a first embodiment, with front, back, right, and left elevation views given by Figures 1, 2, 3, and 4, respectively; and a second embodiment, with these views given by Figures 1, 2, 5, and 6. Thus, each embodiment has two views showing a straight horizontal ornamental line and two views showing an angled ornamental line. Times Three offers no reason why, for either embodiment, one skilled in the art would know to prefer the two figures showing an angled ornamental line over the two figures showing a straight line.

Times Three cites several cases in which inconsistencies have not been fatal to the validity of a patent, but these cases are inapposite. Here, half of the figures depict the ornamental line with one shape and position, half depict it another way, and neither half can be disregarded as unclear due to the use of an unusual perspective. In particular, Times Three cites HR U.S. LLC v. Mizco International, Inc., 07 Civ. 2394 (DGT), 2009 WL 890550 (S.D.N.Y. Mar. 31, 2009). Relying on a statement in the MPEP, the court held that, for a design patent to be invalidated for indefiniteness, "errors and inconsistencies in

the patent drawings must be material and of such magnitude that
the overall appearance of the design is unclear." Id. at *6.
The inconsistency here meets this standard.  The court in Mizco
went on to hold that inconsistencies did not make the patent
indefinite, as all but one of the inconsistencies "involve[d]
the situation where multiple views are consistent and only a
single view is inconsistent." Id. at *8.  The court also
addressed an inconsistency between two figures, but held that
one of the figures was "somewhat unclear as to th[at] feature"
and therefore one skilled in the art would look to the other
figure. Id.  That is not this case.[9]

### 2. Inconsistency as to the Design of the Back of the Garment Renders the '384 Patent Indefinite.

The '384 Patent also suffers from a fatal inconsistency.
As Times Three concedes, Figure 2 "depicts slightly more of the
top back portion underneath the arm portion than is shown in the
other figures."  In particular, Figure 2 depicts a garment
design with a back extending above the top of the side of the
garment, while Figures 3 and 4 depict a garment design with a
back ending at the top of the side of the garment.

---

[9] In a single-sentence footnote, Times Three suggests that,
"[a]lternatively," the apparent inconsistency in the '558
Patent's drawings "may be due to a shift in perspective."  But
as the perspective appears to be exactly the same in all of the
drawing sheets, and no other portion of the garment design is
warped, this suggestion is easily rejected.

**'384 Patent Figures 1-6**



Fig. 1        Fig. 2        Fig. 3        Fig. 4        Fig. 5        Fig. 6

Drawing sheets from the earlier '377 Patent nicely illustrate the problem, depicting side views consistent with Figure 2.

**'377 Patent Figures 1-6**



Fig. 1        Fig. 2        Fig. 3        Fig. 4        Fig. 5        Fig. 6

Resolving this inconsistency in favor of the design depicted by the '384 Patent's back view, as opposed to the design depicted by the side views, would materially alter the "subject matter . . . covered by the exclusive rights of the patent." Ancor, 744 F.3d at 737. Once again, Times Three points to no intrinsic or extrinsic evidence that would allow the Court to do more than guess between the two inconsistent

designs.  It is true, as Times Three urges, that, the side-view version appears in two figures for each embodiment while the back-view version appears in only one.  Yet, Figures 3 and 4 are mirror-images of one another, and thus the repetition of their version of the design is automatic -- it is not confirmatory evidence of the true bounds of the claimed design.  Cf. MPEP ¶ 15.48 ("duplicative" views may be omitted, as where "the left and right sides of a design are . . . a mirror image").  Accordingly, the '384 Patent is "insolubly ambiguous" and so invalid for indefiniteness.  Teva, 723 F.3d at 1368 (citation omitted).

> **3.   Spanx Has Not Established that the '377 Patent Is Indefinite.**

Spanx argues that the '377 Patent is indefinite in its claim concerning the back of the garment design, as Figure 2 appears to claim the back of the garment while disclaiming one of the defining bounds of the back -- the neckline.  But Figure 2's use of shading and broken lines is clear: the '377 Patent claims the back of the garment up to the neckline, including portions designed to sit atop the shoulders, but not the shape of the neckline.

**'377 Patent Figure 2**



Spanx does not dispute that a patentee may claim a design for a portion of an article of manufacture and need not claim a design for a "complete article[]." In re Zahn, 617 F.2d 261, 268 (C.C.P.A. 1980). That the patentee elected not to claim the back of the neckline does not render the claim indefinite, for the scope of the claim is clear -- the "subject matter . . . covered by the exclusive rights of the patent" is simply not limited by a particular shape of the neckline. Ancor, 744 F.3d at 737.

The prosecution history of the '377 Patent is not to the contrary. The patent examiner did object to Figure 1 on "accuracy" grounds, noting that "since the front portion of the article [the front neckline] is much lower than the rear portion of the article [the rear neckline] (and the rear would be seen from the front view)," patentee's counsel "agreed to add the back portion of the article (the outermost line in solid lines

and the perimeter of the area in broken lines)."  The patent
examiner suggested the following correction:

**Suggested Correction to Fig. 1**



The patentee did not make the requested change; nevertheless,
the '377 Patent was issued.  The patent examiner made no such
request concerning Figure 2.  And it appears from the examiner's
suggested correction, which included an "unclaimed perimeter"
for the neckline, that the examiner had no objection to the fact
that the patentee did not claim the neckline.  Spanx has not
overcome the presumption of validity accorded the '377 Patent.

**CONCLUSION**

The disputed portions of the Patents' claims, as set forth
in the parties' claim construction submissions of November 6,
December 6, December 23, and January 8 are construed as set
forth above.  The '558 Patent and the '384 Patent are held

invalid for indefiniteness; the '377 Patent is not.


SO ORDERED:

Dated:    New York, New York
          April 29, 2014

_____
          DENISE COTE
     United States District Judge